STATE v. JESSE ROHART.[1]

May 17, 1901.

Nos. 12,636—(15).

**Park Ordinance—Heavy Traffic.**

An ordinance of the board of park commissioners of the city of Minneapolis provides that no vehicle which, together with its load, weighs more than two thousand pounds, and which is in use for carrying goods, merchandise, building material, manure, dirt, earth, or other article or commodity, and which has tires less than six inches in width, shall pass or enter upon any park or parkway. *Held*, as applicable to a parkway, the ordinance is void, because unreasonable, and in its effect prohibitive of traffic thus classified.

**Creation of Parkway.**

Whether or not the parkway in question was established as such by assumption of authority over it by the park board, and by acquiescence therein on the part of the city council, in the absence of any express action as a body, quære.

Defendant was convicted in the municipal court of Minneapolis of a breach of an ordinance of the board of park commissioners of said city, in driving a wagon having tires less than six inches wide and together with its load weighing more than two thousand pounds, on Lyndale avenue boulevard. From an order, Kerr. J., denying a motion for a new trial defendant appealed. Reversed.

*John W. Arctander*, for appellant.

*Frank Healy*, City Attorney, and *C. J. Rockwood*, for respondent.

LEWIS, J.

An ordinance of the board of park commissioners of the city of Minneapolis provided that no vehicle which, together with its

[1] Reported in 86 N. W. 93.

load, weighed more than two thousand pounds, and had tires less than six inches wide, should pass over or enter upon any of the parkways of the city. Defendant was convicted of violating this ordinance in July, 1900, by driving upon Lyndale avenue with a wagon equipped with tires $3\frac{1}{4}$ inches wide, and carrying a load of over two thousand pounds. Defendant appeals from an order denying his motion for a new trial, and claims in this court that the conviction ought not to be sustained, for the reason that the part of Lyndale avenue upon which he was driving when arrested was not a parkway, but, if it was a parkway, that the ordinance requiring such traffic to be conveyed upon vehicles furnished with six-inch tires was unreasonable and void.

It appears from the record that in 1887, and for many years prior thereto, Lyndale avenue was a public street and highway, and had been used and traveled as such; that on June 25, 1887, the park board passed a resolution designating that part of Lyndale avenue here in question as a parkway, and through its secretary sent a communication to the city council announcing the passage, on July 19, 1887, of that resolution, as follows:

"Resolved, by the city council of the city of Minneapolis, that so much of Lyndale avenue as lies between Western avenue and Twenty-Ninth avenue North be dedicated and turned over to the board of park commissioners as a parkway in compliance with their request of July 7, 1887."

After these proceedings the park board took possession of the street, and caused the same to be macadamized, at a cost of $13,000, the foundation of such macadam being broken stone, surfaced with limestone rock, with a slight covering of gravel, and rolled with a steam roller. Thereafter, and on November 19, 1887, the park board's attorney submitted a report to the board relative to the title of the land along Lyndale avenue, and recommended that a certain proportion thereof, including that involved in this case, be abandoned for parkway purposes until the city should have perfected its title thereto. Upon this report the board passed a resolution to the effect that all proceedings of the board relative to laying out and improving Lyndale avenue as a parkway between Twentieth avenue North and Twenty-Ninth ave-

nue North be abandoned, annulled, and rescinded, to the end that the city might acquire a perfect title to the same before designating it for parkway purposes. The city thereupon commenced proceedings for the laying out of Lyndale avenue to a width of sixty-six feet, and for condemning the necessary property for that purpose, which proceedings terminated in making the street a public highway. It does not appear that any further steps were taken by the city council to redesignate the avenue for a parkway, or in any way giving its consent to the same, except by its silent acquiescence; nor does it appear that the park board took any action, as a body, to rededicate, or to designate and set aside, such avenue for parkway purposes.

It is asserted by counsel for the city that the park board assumed control of the avenue, and has had possession of and exercised dominion over it from the time of the completion of the council's condemnation proceedings in 1888 down to appellant's arrest in July, 1900. But the record is void of evidence showing what, if any, acts the park board performed in the exercise of such control. There is nothing to show that it kept the roadway in repair. Neither does it appear when the ordinance went into effect. So far as we are informed by the record, dominion and jurisdiction by the board over the avenue as a parkway can only be inferred from the fact that in 1887 the board instituted proceedings for its improvement by macadamizing it, and vacated such proceedings only for the purpose of permitting the city to perfect its title to the land, and from the further fact that the board assumed jurisdiction over it by having caused the arrest of appellant.

Sp. Laws 1883, c. 281, § 2, provides that the park board shall have the power, and it shall be its duty, to devise and adopt a system of public parks and parkways, and to designate the lands and grounds to be used and appropriated for the same; and, upon obtaining title or the right of possession thereof, to hold, govern, and administer the same, and to lay out and improve the same according to such plan as the board may adopt. But by Sp. Laws 1885, c. 304, § 1, it is provided that all parkways shall be subject to the control and government of the board of park commissioners

in respect to the construction, maintenance, regulation, and government thereof, and to the use, travel, and traffic over and upon the same: Provided, that no street, alley, or public place, or any part thereof, shall be made a parkway without the consent of the city council. Under this law it is clear that the park board had authority to designate Lyndale avenue as a parkway in the manner in which it did,—by a resolution to that effect. It is equally clear that the rights of the public in relation to such street could not be changed unless the city council gave its consent to such dedication. Such consent might be given, as it was in the first instance, by a resolution of that body; but there is nothing in the act to prevent such consent from being given in some other manner. It might be inferred from the council's conduct in reference to the avenue. If, in fact, the park board did designate it as a parkway, and had assumed control of it for a number of years without objection on the part of the city council, then consent might be inferred. The difficulty with this case is that the record does not furnish convincing evidence either that the park board actually took possession of the avenue after title thereto was perfected by the city, and continued to exercise dominion over it as a parkway down to the time of appellant's arrest, or that the city council acquiesced in such control, if assumed, by the park board. But, inasmuch as the case must be disposed of adversely to respondent upon the question of the validity of the ordinance, we have deemed it wise not to determine, at this time, whether or not Lyndale avenue was a parkway at the time in question.

2. The pertinent part of the ordinance here involved reads as follows:

"* * * No vehicle, which, together with its load, weighs more than two thousand pounds, and which is in use for carrying goods, merchandise, building material, manure, dirt, earth, or other article or commodity, and which has tires less than six inches in width, shall pass or enter upon any park or parkway."

It was held in the case of State v. Waddell, 49 Minn. 500, 52 N. W. 213, that in respect to a parkway to which the city had not acquired title as a part of its park system the board had no power to exclude the ordinary class of traffic, and confine the travel

thereon to what may be termed park or pleasure travel. A distinction is made between streets and avenues of a park system to which the city has acquired title for such purposes and a street which has simply been designated a parkway by the board with the consent of the city council. In the one case the board has complete jurisdiction and power, not only to regulate, but to prohibit, general traffic; while in the other case it has no power to prohibit general traffic. It does not follow, however, that it has not the power to regulate such traffic within a reasonable limit.

Conceding that the avenue in question was a parkway, and could be used by the public for general purposes of travel and traffic, how far does the board's regulating power extend? If, in order to protect the roadbeds, it were necessary to prohibit heavy traffic in wagons with narrow tires, provided wider ones were reasonably obtainable, such requirement would not be unreasonable; but in this case the tire used by appellant was of the widest in common use carried in the market for such traffic. According to the evidence, the six-inch tire was not in common use, and was not found in the market ready-made, and only obtainable upon special order, and at extra expense. The evidence does not disclose that the roadway was in any manner damaged by appellant's wagon, nor does it appear that such traffic with $3\frac{1}{4}$ inch tires would tend to impair the same. Under these circumstances the ordinance contained an unreasonable and arbitrary requirement, which, in its effect, was prohibitive of that class of traffic. Such power the board of park commissioners did not possess, and in that respect the ordinance is void.

Order reversed.

On May 28, 1901, the following order was made:

PER CURIAM.

Since filing our opinion in this case, attention has been called to a misstatement of facts. It is stated in the opinion that all proceedings with reference to the acquisition of Lyndale avenue as a parkway between Twentieth and Twenty-Ninth avenues had been abandoned and rescinded by the board of park commissioners. A more critical examination of the record discloses the fact that the

resolution passed by the park board, as amended, referred only to Lyndale avenue betweeen Twentieth and Twenty-Fourth avenues North, and, as the alleged trespass occurred between Twenty-Fourth and Twenty-Ninth avenues North, it is contended on behalf of respondent that that portion of the parkway was never abandoned. It appears, however, that the resolution was reported by the secretary of the park board to the city council as originally introduced, including the street from Twentieth to Twenty-Ninth avenues North, and it was upon this resolution, as so reported, that the council took action. We make this correction in order that the facts may not be misunderstood, but we are unable to see that it affects the conclusions of the court as stated in the former opinion. We shall not undertake to decide whether or not, under such circumstances, the parkway was abandoned, and we leave that question undetermined.

The petition for reargument is denied.