**STATE OF FLORIDA, ex rel Joel W. Parker, v. WILLIAM W. FRICK, as Sheriff of Indian River County.**

7 So. (2nd) 152                                    En Banc
March 24, 1942

John D. Shepard, for petitioner.

J. Tom Watson, Attorney General, and Joseph E. Gillen, Assistant Attorney General, for respondent.

BUFORD, J.:

At the regular session of the Legislature of Florida of 1941 there was enacted Chapter 21308, having been House Bill No. 1539, which provided as follows:

"An Act to Fix, Establish and Limit the Weight of Loads or Cargoes which may be Transported Upon, Over, and Across the Respective Bridges Traversing the Indian River in Indian River County, Florida, and Making it Unlawful to Transport Loads or Cargoes in Excess of Such Weight Limit Upon, Over and Across Such Bridges and Providing Penalties for the Violation of This Act.

"Be It Enacted By the Legislature of the State of Florida: Section 1. The weight of loads or cargoes which may be transported upon, over and across the respective bridges traversing the Indian River in Indian River County, Florida, is herewith fixed, established and limited at the maximum weight of five tons for such loads or cargoes drawn, propelled or transported by means of a single power unit and which limit shall be exclusive of the vehicle by means of which loads or cargoes are transported.

"Section 2. Any person transporting or causing to be transported or assisting in transporting or causing to be transported any load or cargo upon, over and across any bridge traversing the Indian River in Indian River County, Florida, and which load or cargo drawn, propelled or transported by a single power unit

is of weight in excess of five tons, shall be guilty of a misdemeanor and shall be punished upon conviction as provided in this Act.

"Section 3. Any person who, as a master, principal or employer, causes his servant, agent or employee to violate the provisions of this Act shall likewise be deemed guilty of violating this Act and such master, principal or employer may be tried, convicted and sentenced for such violation prior to the trial, conviction and sentence of the servant, agent or employee.

"Section 4. Any person who may find it necessary to transport across any of the bridges described in this Act any machinery or equipment of a weight in excess of the limit fixed in this Act may make application to the Board of County Commissioners of Indian River County for a permit to transport over such bridge such machinery, equipment or load and said Board, in its discretion, is authorized to grant such permit in the event of such emergency and, thereupon, the transporting of such load or cargo as provided under such permit, shall not be deemed a violation hereof.

"Section 5. If any section or portion of this Act shall be declared to be unconstitutional or void, the remaining sections or portions of this Act shall remain in full force and effect.

"Section 6. Any person violating any provision of this Act, as herein provided, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding $500.00 or by imprisonment in the county jail for a period of not exceeding six months or by both such fine and imprisonment, in the discretion of the Court trying the offender.

"Section 7. All laws or parts of laws in conflict herewith be, and the same are hereby repealed.

"Section 8. This Act shall be effective immediately upon its becoming a law.

"Approved by the Governor June 10, 1941."

"On January 10th 1942 information was filed against Petitioner in the County Court of Indian River County, Florida, wherein it was charged:

"That Joel W. Parker late of the County of Indian River and State of Florida, on the 29th day of December in the year of our Lord One Thousand Nine Hundred and Forty-one in the County and State aforesaid, did then and there unlawfully transport a cargo across the Wabasso bridge, which said bridge traverses the Indian River, and which cargo was transported by a single power unit, and which cargo was in excess of five tons, by operating a Mack truck across said bridge which traverses the Indian River, which said Mack truck did draw an 8-wheel utility trailer, a better description of said truck and trailer being to the Prosecuting Attorney unknown, the cargo of said truck consisting of one hundred and four field boxes of grapefruit aggregating five tons, and the cargo of said trailer consisting of one hundred and four field boxes of grapefruit aggregating five tons, and which total load and cargo drawn and transported by such power unit was then and there of an aggregate in excess of five tons."

Motion to quash having been denied, the accused was tried and convicted and sentenced to pay a fine of $25.00 and costs and in default of the payment of such fine and costs to serve thirty days in the county jail of Indian River County. Whereupon petitioner

applied here for a writ of habeas corpus which was granted.

In ths proceeding petitioner challanges the validity of the statute, supra.

In the brief and argument several points are presented upon which petitioner rests his conclusion that the Act is invalid. We deem it necessary to consider only two points presented. The first is whether or not the Act contravenes Section 1 of the Declaration of Rights of our Constitution and the Fourteenth Amendment to the Federal Constitution. See 25 American Jurisprudence, page 469 Sec. 174.

The record shows that the bridge upon which petitioner is alleged to have violated the statute is a constituent part of the State Highway System of the State of Florida. The State of Florida, having established its highway system in 1933, through its legislature enacted Chapter 16085 whereby it fixed load limits which could be lawfully transported over the State highway system of Florida and by Chapter 20210, Acts of 1941, increased the weight limit allowed for motor trucks and trailers on the State highways. Section 1 of the latter Act provides as follows:

"Section 1. No motor vehicle, or combination of vehicles shall be operated on a public highway in this State with a gross weight per vehicle, including the weight of such vehicle, in excess of 16,000 pounds; except that the weight of any vehicle may exceed such amount (but may not exceed 16000 pounds per axle nor exceed 550 pounds per inch width of tire) when equipped with booster brakes, vacuum brakes, or power brakes; provided, however, than ten percent overweight is hereby authorized for vehicles equipped with such brakes where such vehicle has at least six

pnuematic tires in contact with the road, provided no such single motor vehicle, as above described shall exceed 24,000 pounds gross weight.

"A tractor and semi-trailer, which semi-trailer when in operation shall have a part of its own weight or that of its load or both resting upon and carried by the tractor furnishing its power, shall be allowed a gross weight (including load) not to exceed 16,000 pounds per axle nor to exceed 550 pounds per inch width of tire, when both vehicles are equipped with booster brakes, vacuum brakes or power brakes; provided that ten percent overweight is hereby authorized when such tractor and semi-trailer have at least ten pneumatic tires in contact with the road, and provided, in no case shall a motor vehicle, or combination of vehicles, be operated on a public highway in this State with a gross weight, including the weight of such vehicle or vehicles, in excess of 40,000 pounds."

So it is that when the Special Act of 1941, supra, is construed with the General Act of 1941, supra, we find that the Special Act has attempted to preclude the use of a part of the State Highway System for the hauling of loads that may lawfully be hauled on the other parts of the State Highway System, and thereby creates a discrimination against those persons who must use that particular part of the highway System to put their goods, wares and merchandise into the arteries of transportation and over the State Highway System of Florida in competition with others whose geographical location does not require them to use that particular part of the State Highway for transportation.

The record here shows by uncontradicted allegations that there is no infirmity or weakness in the

bridge involved which makes such discrimination at all necessary.

We are mindful of the fact that the legislature has plenary power to regulate the use of the roads and highways in the State and that the legislature may prescribe maximum loads that may be caried by motor vehicles, or otherwise, over the state highways. But, such regulation must be reasonable and not arbitrary and it must stand upon the right of the State to exercise its police power. The police power here sought to be exercised must necessarily be one exercised for the promotion or protection of the public safety and public welfare. It may well be that as to any particular place on the highway where an extraordinary hazard may exist, the legislature has the power to enact such statutes as are necessary to protect the public from the hazard encountered at such place.

If it be lawful and within the province of the legislature to limit the load to be transported on the truck over the bridge across this River in Indian River County to 5 tons, then, by the same token, the legislature may so limit the load which may be carried over any bridge over the Choctawhatchee River in Holmes County, or over the Suwannee River between Suwannee County and any other particular county and over the Saint Johns River in Duval County, all of which is unthinkable, in view of the present conditions of commercial transportation on the great highway system of the State of Florida, and in view of the discrimination which such statutes would inflict in the regulation of such transportation in this State which is now regulated by general law applying to all state roads and areas alike. Such Acts would, as this

does, violate the equal protection of the law which is guaranteed under the Constitution. Clearly, a citizen cannot be penalized because he is so located that he must use a certain bridge which is adequate for all purposes contemplated under the general law and which constituted a part of the State Highway System.

Aside from this, however, the Act challenged shows upon its face that it could not have been enacted in the promotion of public safety or because of any weakness or infirmity of the bridge involved.

This brings us to the Second point: That the Act here limits the load or cargo which may lawfully be drawn or propelled over this bridge to five (5) tons if it be drawn by a single power unit, but there is no limitation in the Act of the load which may be drawn by a double or triple power unit. In other words, under this Act, A may use a ten ton tank to draw a five ton load across the bridge and violate no law; or he may attach a trailer carrying a ten ton load to two power units, either 2 trucks, 2 tractors, or a truck and a tractor, and proceed to draw his ten ton load with the two power units across the bridge and violate no provision of this Special Act.

As heretofore said, we recognize the power in the State to limit the weight of a vehicle or the load thereon to be transported on a highway. See South Carolina State Highway Dept. v. Barnwell Bros. 303, U. S. 171, 82 L. Ed. 734, 58 Sup. Ct. 510; Sproles v. Binford, 286 U. S. 374, 76 L. Ed. 1167, 52 Sup. Ct. 581; To be valid, however, such regulations must not be unreasonable, arbitrary or discriminatory in their provisions or operations. See Brown v. Nichols, 93 Kan. 737, 145 Pac. 561, L.R.A. 1915-D 327; State v.

Robert 83 Minn. 257, 86 N.W. 93, 54 L.R.A. 947; City Council of Augusta v. Barum, 93 Ga. 68, 19 S.E. 820, 26 L.R.A. 340.

The general principles governing the interpretation and construction of police regulations generally are. applicable to regulations governing the use of highway. See Am. Jurisprudence 533.

Having reached the conclusion that the Act is invalid, for the reasons stated, it is not necessary to discuss other questions presented.

Petitioner is discharged.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS and ADAMS, JJ., concur.